[No. 3979.]

CAPPS ET AL. v. KRIER.

1. ELECTIONS—REPRESENTATION IN POLITICAL CONVENTION—POWER OF COMMITTEE.

A committee of a political party, in a county, authorized to call a convention and apportion the representation, has power to establish districts for the purpose of selecting delegates, and is not limited in the exercise of such power to the established voting precincts of the county.

2. ELECTIONS—POLITICAL CONVENTION—PRECINCT REPRESENTATION.

Where a precinct convention selected three delegates authorized to represent the precinct in the county convention of a political party, neither of whom was present at the county convention, and the secretary of the precinct convention wrongfully withheld the credentials of the delegates and attempted to represent the precinct without any authority from either of the delegates chosen, the vote of the precinct was properly rejected by the chairman upon a vote for temporary chairman.

3. ELECTIONS—PRACTICE—REVIEW OF ACTION OF COUNTY CLERK ON OBJECTIONS TO NOMINATION CERTIFICATES.

The procedure provided by statute for review by the courts of the action of the county clerk on objections to nominating certificates is summary, and where the respondent on review in the district court saw fit to submit his case on the evidence of the petitioner, and the petition was dismissed, it should be treated as a judgment on the merits and upon review of the action of the district court by the supreme court the cause should be finally disposed of upon the record.

*Review from the District Court of Huerfano County.*

Mr. C. H. PIERCE and Mr. MILTON SMITH, for petitioners.

Mr. P. W. SWEENEY and Mr. E. A. BALLARD, for respondent.

MR. JUSTICE GODDARD delivered the opinion of the court.

It appears from this record that during the years 1897 and 1898 J. R. Killian was the duly qualified and acting chairman of the Democratic county central committee of Huerfano county. On October 13, 1898, he issued a call for a convention of that party, to be held at the courthouse in Walsenburg at 2 o'clock P. M. on Thursday, October 20, for the purpose of nominating candidates for the several county offices to be filled at the then ensuing election. Pursuant to this call, at the time and place designated, delegates assembled and were called to order by the chairman, and proceeded to the election of a temporary chairman. Capps and Griffen were placed in nomination. It appearing that there were contesting delegations from some of the precincts, the chairman ruled that none but delegates whose seats were uncontested should be permitted to vote upon the temporary organization. There arose considerable discussion over the ruling, but the chairman persistently adhered to it, and no appeal being taken from his decision, the roll call was proceeded with, and resulted, according to the secretary's tally, in a tie vote, each receiving thirty-one votes. On inspection of the roll, it was ascertained that two votes from what was called the Maitland precinct had not been counted. Those votes being added, the result was thirty-three to thirty-one in favor of Capps. This result was arrived at by excluding, among other contested delegations, the vote of precinct 18, which was entitled under the call to be represented in the convention by three delegates. The chairman, after stating that the vote stood thirty-three to thirty-one in favor of Capps,

and before announcing that Capps was elected, asked if any
delegation wished to change its vote. There being no re-
sponse, he announced that Capps was elected temporary chair-
man. No appeal was taken from this decision, but Dr. Baird,
a member of a contested delegation, arose in the body of the
convention, and made motion that Griffen be declared tem-
porary chairman of the convention, and put the motion to a
*vive voce* vote; and upon an indiscriminate roar of "ayes" and
"nos," he declared the motion carried. Great confusion and
uproar ensued, resulting in the rival factions separating
and organizing two conventions, one presided over by Grif-
fen and the other by Capps. Each nominated a list of can-
didates for county offices, and adopted the name and emblem
of the Democratic party, and filed certificates of such nomi-
nations with the respondent as clerk and recorder of Huer-
fano county. Thereupon petitioners filed a protest against
the recognition of the Griffen certificate, which protest was
by the respondent overruled. To review this decision peti-
tioners instituted this proceeding in the district court.

The court, after hearing the testimony of petitioners, enter-
tained a motion for nonsuit and dismissed the proceeding for
the reason that the delegates from the Maitland precinct were
permitted to vote upon the election of temporary chairman,
and the delegates from the 18th precinct were denied that
right. The court based its ruling that the vote from the
Maitland precinct should be excluded upon the ground that
it was not a voting precinct established by the board of
county commissioners, but was merely established by the
county central committee for the purpose of giving the Demo-
crats who resided in that community a representation in the
Democratic county convention. In this we think the court
erred. We are not aware of any limitation upon the power
of a committee that is authorized to represent a political party
in apportioning delegates to its conventions, in establishing
such precincts or districts as it may see fit, for the purpose
of selecting delegates to such conventions. In any event it
is a matter of party policy, and until the action of the com-

mittee is questioned by some party authority, it certainly is not within the province of the court to control its action in this regard. The testimony is undisputed that the custom of allowing such communities a representation in their conventions prevailed in the Democratic party in that county, and that in the preceding year the Maitland mine was allowed a delegation, and also the mine at Pryor, although, like the Maitland mine, it was part of a voting precinct, and, so far as the testimony shows, no objection was made to counting the votes from this precinct.

Nor can we agree with the ruling of the court below that the chairman wrongfully excluded the vote of precinct 18. While it is true, as found by the court, that no written contest or protest against this delegation was filed, yet it does appear that prior to the roll call a verbal protest was made to the chairman, in the hearing of the secretary, against the vote from that precinct being received, for the reason that the party who was attempting to represent that delegation was a nonresident of the state, and had surreptitiously obtained possession of the credentials, and had no authority from either of the delegates elected in that precinct to represent them in the convention. During the roll call, when that precinct was reached and called, a further protest was made against the vote being counted, for the reasons above given.

If it is permissible for the court to go back of the decision of the chairman, and inquire into and pass upon the merits of the protest, the testimony abundantly sustains his action in excluding this vote. It appears that at the primary held in this precinct, Andrew McChaine, Antonio Martineau and Dan Lucero were elected delegates. The evidence does not disclose that either of these delegates were present at the convention, but it does show that a Mr. Allison, who acted as secretary at the primary, had wrongfully retained possession of the credentials, and that he, without any authority from either of the delegates, was attempting to represent that precinct. It is manifest that under these circumstances the vote of that precinct was properly excluded. It follows that

Mr. Capps received a majority of the votes rightfully cast for temporary chairman, and the convention over which he presided was the regular and legally organized Democratic county convention, and its nominees are entitled to have their names certified and printed on the official ballot, under the name and emblem of that party.

It is urged by counsel for respondent that in the event of a reversal of the judgment under review, it being a judgment of nonsuit, the cause must be remanded for the purpose of allowing the respondent to introduce his testimony. We cannot accept this view. The procedure provided by the statute is summary, and contemplates a hearing and determination of the cause upon its merits, and parties should not be permitted to try their case by piecemeal, or by dilatory tactics to thwart this purpose. If a respondent, in such an action, sees fit, without introducing any evidence on his part, to submit the case upon the evidence of the petitioner, a judgment dismissing the proceeding should be treated as a judgment upon the merits, and upon review in this court the cause should be finally disposed of upon the record presented. The judgment of the district court is therefore reversed and the cause remanded, with direction to enter judgment ordering respondent to print the names of petitioners upon the official ballot, under the name and emblem of the democratic party.

*Reversed.*

CAMPBELL, C. J., dissenting.

The questions of fact involved have been determined by the district court, who heard the witnesses testify, in one way, and by the majority of this court otherwise. Upon this difference in the findings, as well as upon the merits of the case generally, I express no opinion, because I am firmly convinced that the application, under the statute, asking this court to review the judgment below, should be summarily dismissed.

. Our discretionary jurisdiction to review the judgment is

invoked only five days prior to the election on November 8; to be entirely accurate, the record is in such condition that not until late on the afternoon of November 2 could we take final action. Section 11 of the election act of 1891 directs the county clerk to publish, or post, a list of all nominations certified to him in the manner and for the time specified therein, the details of which need not be mentioned here, and this duty must be performed at least six days before election day. Section 12 requires him, at least six days prior to election day, to send to the election officers in each precinct of the county not less than five, and not more than ten, copies of such printed or posted list, which are to be posted in some conspicuous place by the election officers at least three days before the day of election. Section 17 provides that sample ballots shall be printed and in the possession of the county clerks seven days before the day of election, subject to public inspection, while the official ballots themselves shall be printed and in the possession of the county clerk at least four days before the election, subject, also, to the inspection of the candidates and their agents.

It appears from the statement of counsel that the official ballots for Huerfano county cannot be printed at the county seat, Walsenburg, but are to be printed at Colorado Springs, about 100 miles distant, and thence sent to the county seat. It is not possible for the county clerk to comply with the ruling of this court, and, at the same time, conform to the plain and positive directions of the statute as to time. He must violate one or the other.

If these statutory directions, as to time, are mandatory, then the court, as well as the county clerk, is absolutely, though inferentially, precluded from disregarding them; if directory only (and I do not say which contention is right), still parties bringing a record here at so late a day are not entitled to a hearing.

It is proper to observe that, in my judgment, this court has established, and is establishing, an unwholesome practice in taking indiscriminate jurisdiction of these election disputes.

When the law-making power declared that a review in the supreme court was not as of right, but only in the court's discretion, it was not contemplated that its time for several weeks in each year would be consumed, to the exclusion of all other business, with such cases. But so far the court has complied with every request made for a review. Certainly if there ever was a cause which we should refuse to hear, the case at bar is one. If conventions are held at so late a day as that, in due course of procedure, controversies growing out of them reach this court only five days prior to election, whatever be the merits, we should refuse to review the record, but leave the parties to their rights as they are adjudicated below.

To say the least, except in the most extraordinary cases (among which this is not to be classed), the court, even if it has the power to do so, should not shorten the statutory time allowed the county clerk, all of which is needed by him in printing or posting the lists and preparing the sample and official ballots and sending them to the various precincts of his county. The rights of electors generally are paramount to the interests of dilatory nominees, or their representatives, and the exercise of the elective franchise by the former should not be jeopardized, as it might be, through interference with the printing of the official ballots at so late a date as to render it impossible for the county clerk to get them to all the polling places.